## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| MORAVIAN ASSOCIATES, LP | : |
| DEBTOR | : BANKRUPTCY NO. 09-14938 SR |
| | : |
| MORAVIAN AT INDEPENDENCE SQUARE | : |
| CONDOMINIUM ASSOCIATION | : |
| PLAINTIFF | : |
| VS. | : |
| MORAVIAN ASSOCIATES, LP | : |
| DEFENDANT | : ADV. NO. 10-0005 |
| | : |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

## Introduction

Before the Court is the Debtor's Motion to Dismiss the Second Amended Complaint (SAC) for Declaratory Relief filed by Moravian at Independence Square Condominium Association (the Association). The Association opposes the motion. Briefs were submitted. A hearing on the matter was held on April 20, 2010. The Court next took the motion under advisement. For the reasons set forth below, the Motion will be granted and the SAC will be dismissed without prejudice.[1]

## Background

The underlying complaint seeks a determination that certain real property is now

---

[1]Because the Association's claim involves what is essentially a claim against the estate, it is within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B).

owned solely by the Association.  The property in question is a parcel originally

designated as a parking space at the Debtor's condominium project.  In that regard it is

alleged that the Debtor's project originally envisioned the sale of condominium units as

well as separate parking spaces; that the project designated 19 parking spaces; that

one of the parking spaces (Space One) had been placed at an inconvenient location for

driving in and out of the garage; that a meeting occurred at which it was agreed

among all unit owners in attendance, as well as the Debtor's agents, that Space One

would not be sold but would become part of the commonly owned property at the

condominium; and that, as a result, the parcel formerly designated as Space One has

consequently become property of the Association.

**Legal Standard**

The Debtor's Motion is premised on F.R.C.P. 12(b)(6)[2]; to wit, that the SAC fails

to state a claim upon which relief can be granted.  To survive a motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.' "*Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937,

1949, 173 L.Ed.2d 868 (2009)(citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2008)); *see also Fowler v. UPMC Shadyside,* 578 F.3d

203, 210 (3d Cir.2009) (explaining that pleading standards have seemingly shifted from

simple notice pleading to a more heightened form of pleading, requiring a plaintiff to

plead more than the possibility of relief to survive a motion to dismiss).  The Supreme

---

[2]Made applicable to adversary proceedings by B.R. 7012(b).

2

Court explained that although factual allegations are to be accepted as true for

purposes of legal sufficiency, the same does not apply to legal conclusions; therefore,

the factual allegations must sufficiently support the legal claims asserted. *Iqbal,* 129

S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,*

550 U.S. at 555); *see also Fowler,* 578 F.3d at 210; and *Phillips v. County of Allegheny,*

515 F.3d 224, 231 (3d Cir.2008).

### Debtor's Arguments

The Debtor offers three arguments as to why the Complaint is legally

insufficient: first, there is no allegation of a recorded conveyance of the parking space

from the Debtor to the Association; second, the Association is implying that the Debtor

has abandoned Space One, but as a legal matter, abandonment applies only where title

is imperfect or inchoate; and third, the  Pennsylvania Condominium Act requires the

amendment of the operative documents to change the boundaries of the units. *See*

Motion to Dismiss.

### Statute of Frauds

The Debtor's first argument relies on the common law Statute of Frauds, codified

at 33 P.S. § 1:

> From and after April 10, 1772, all leases, estates, interests
> of freehold or term of years, or any uncertain interest of, in,
> or
>
> out of any messuages, manors, lands, tenements or
> hereditaments, made or created by livery and seisin only, or
> by parol, and not put in writing, and signed by the parties so

3

making or creating the same, or their agents, thereunto
lawfully authorized by writing, shall have the force and
effect of leases or estates at will only, and shall not, either in
law or equity, be deemed or taken to have any other or
greater force or effect, any consideration for making any
such parol leases or estates, or any former law or usage to
the contrary notwithstanding; except, nevertheless, all
leases not exceeding the term of three years from the
making thereof; and moreover, that no leases, estates or
interests, either of freehold or terms of years, or any
uncertain interest, of, in, to or out of any messuages,
manors, lands, tenements or hereditaments, shall, at any
time after the said April 10, 1772, be assigned, granted or
surrendered, unless it be by deed or note, in writing, signed
by the party so assigning, granting or surrendering the
same, or their agents, thereto lawfully authorized by writing,
or by act and operation of law.

The statute of frauds requires no more than "a memorandum in writing signed by the

parties to be charged which sufficiently indicates the terms of the contract and the

property to be conveyed." *Brown v. Hahn*, 419 Pa. 42, 51, 213 A.2d 342, 347 (1965).

Its aim "is the prevention of successful fraud by inducing the enforcement of contracts

that were never in fact made. It is not to prevent the performance or the enforcement

of oral contracts that have in fact been made." *In re Estate of Beeruk*, 429 Pa. 415,

418-19, 241 A.2d 755, 758 (1968) quoting 2 *Corbin, Contracts* § 498 at 680-81 (1950).

It eschews exalting "informality in the memorandum or its incompleteness in detail

[which] neither promotes justice nor lends respect to the statute." *Axler v. First*

*Newport Realty Investors*, 279 Pa.Super. 14, 420 A.2d 720, 722 (Pa.Super.1980) citing

*Beeruk, supra*.  Accordingly "'some note or memorandum' that is adequate ... to

convince the court that there is no serious possibility of consummating fraud by

enforcement" will place the claim outside the statute of frauds. *Id.*

4

The SAC attaches a number of documents which, the Association contends, indicates the Debtor's intent to eliminate Space One and to subsume it into the commonly owned property.  First is the minutes of a meeting of the Condominium Association Board at which the subject was discussed.  *See* SAC, Ex. A. In attendance at the meeting was the Debtor's agent Mr. Taraila.  It was resolved at that meeting that Space One had to be removed.  Next is a letter from the Association to all owners that Space One would be eliminated.  *Id.*, Ex. B.  In the same month the Association would write to another unit owner explaining to that owner that Space One was no longer available to him.  *Id.*, Ex. C.  Copied on that letter were two of the Debtor's agents, Messrs Taraila and Sutton.  Finally, the SAC incorporates a fax transmission from Mr. Sutton to a prospective buyer.  The fax was sent on the letterhead of the Association's management company and attaches a redrawn garage plan.  That new plan no longer designates a Space One parking unit.  *Id.*, Ex. E.  Importantly, the fax was signed by Mr. Sutton.

None of these documents, to be sure, expressly states that Space One is conveyed by the Debtor to the Association.  However, the import of these documents is clear: the condominium owners–through the Association—intended to eliminate parking Space One and that an agent of the Debtor—either Mr. Taraila or Mr. Sutton—was present when this was discussed and resolved upon and voiced no objection.  The Court finds that while this is not conclusive evidence of a conveyance, it is sufficient to place the claim outside the Statute of Frauds and survive dismissal and the Debtor's request for dismissal of the SAC on this basis will be denied.

5

**Abandonment**

The Debtor next reads the SAC to allege that it has abandoned any interest in Space One. Pennsylvania law provides that "[a] perfect title cannot be lost by abandonment unless in consequence thereof adverse possession is taken and held for the period of the statute of limitations." *Shearer v. Rochester & Pittsburgh Coal Co.,* 20 Pa. D. & C.3d 67, 76, 1981 WL 468 at **5 (Pa.Com.Pl. 1981) *citing Indiana County Petition,* 360 Pa. 244, 62 A. 2d 3 (1948); *Kreamer v. Voneida,* 213 Pa. 74, 62 A. 518 (1905). One alleging adverse possession in Pennsylvania must allege actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. *Shaffer v. O'Toole,* 964 A.2d 420, 423 (Pa.Super.2009) Because nothing remotely resembling the elements of adverse possession or abandonment are set forth in the SAC, no such cause of action has been stated. To the extent the SAC may be read to imply as much it is deficient, and any such contention is dismissed.

**Amendment to**
**Declaration**

The Debtor's final argument is that the Association has failed to follow the required procedure for altering ownership of the units at this condominium. It explains that under the prevailing law, the elimination of the parking space requires either an amendment to the governing condominium document or an opinion of counsel that such formal action is not required. Debtor's Motion, 5-6. Plaintiff responds—albeit not entirely responsively—that, in practice, two other condominium units were eliminated without amending the declaration. *See* Plaintiff's Responsive Brief.

6

Determining which party is correct involves a fairly fundamental analysis of basic

condominium law.  Pennsylvania has adopted the Uniform Condominium Act.[3]  The

operative document for the creation of a condominium is referred to as a declaration.[4]

It is executed in the same manner as a deed; that is, by all persons whose interests in

the real estate will be conveyed to unit owners.  *See* 68 P.S. § 3201.  The declaration of

the condominium must contain, *inter alia*, "[a] description or delineation of the

boundaries of each unit[5]", a "statement of the maximum number of units that may be

created by the subdivision", and a "description of any common elements." 68 P.S. §

3205(4), (5) and (7).[6]  The declaration thus defines the existence of the condominium.

*See Condominium Law and Practice: Forms* § 3.02 (Matthew Bender 2010) (explaining

that the declaration defines the rights as among condominium owners, the

condominium association and the developer); *Town of Windham v. Lawrence Savings*

*Bank,* 776 A.2d 730, 732 (N.H. 2001); *Cantonbury Heights Condominium Association v.*

*Local Land Development, LLC,* 273 Conn. 724, 734, 873 A.2d 898, 904 (Conn.2005)

---

[3]68 P.S. § 3101 *et seq.*  Fourteen other states have as well: Alabama, Arizona,
Louisiana, Minnesota, Missouri, Nebraska, New Hampshire, New Mexico, North Carolina,
Rhode Island, Texas, Virginia and Washington.

[4]Other jurisdictions refer to this document as a Master Deed.  *See, e.g.*, New Jersey

[5]A "unit" is defined as [a] portion of the condominium designated for separate ownership,
the boundaries of which are described pursuant to section 3205(4) (relating to contents of
declaration; all condominiums).  68 P.S. § 3103 Likewise, a "unit owner" is defined as "[a]
declarant who owns a unit, a person to whom ownership of a unit has been conveyed." *Id.*

[6]Common elements are defined as "[a]ll portions of a condominium other than the units."
68 P.S. § 3103

(explaining that the declaration operates in the nature of a contract in that it

establishes parties' rights and obligations).

    While fundamental to the creation of a condominium, the declaration is not set

in stone, but may be amended.  For general amendments, the declaration may be

amended by vote or agreement of unit owners of units to which at least 67% of the

votes in the association are allocated.  *See* 68 P.S. § 3219(a)  Certain changes,

however, require more:

> **When unanimous consent required**.--Except to the
> extent expressly permitted or required by other provisions of
> this subpart, no amendment may create or increase special
> declarant rights, increase the number of units or *change the
> boundaries of any unit*, the common element interest,
> common expense liability or voting strength in the
> association allocated to a unit, or the uses to which any unit
> is restricted, *in the absence of unanimous consent* of the
> unit owners.

68 P.S. § 3219(d) (emphasis added); 6 Summ. Pa. Jur. 2d Property § 7:15.  Requiring

the consent of all unit owners to a change in unit dimensions is common.  *See, e.g.*,

Fla. Stat. Ann. § 718.110(4) (requiring approval of all unit owners in Florida); Ala. Code

§ 35-8A-217(d) (requiring unanimous consent to change in unit size or use in

Alabama); Me. Rev. Stat. Ann. 33 § 1602-117(d) (same as to Maine); Neb. Rev. St. §

76-854(d) (same as to Nebraska); Ariz. Rev. Stat. § 33-1227 (same as to Arizona); N.C.

Gen. Stat. Ann. § 47C-2-117(d) (same as to North Carolina); N.M. Stat. Ann. § 47-7B-

17D (same as to New Mexico); *see also* Poliakoff, 2 *Law of Condominium Operations* §

11:10 (2009) (observing that change in unit itself or unit boundaries may not occur

without a unanimous vote of all unit owners); *cf* N.J. Stat. Ann. § 46:8B-11 (New Jersey

8

condominium law requires consent of unit owner and any lienholders on unit to any

"change in unit."); and *cf. Bonczek v. Helena Place, Inc.*, 1990 WL 105766

at *6 (Del.Ch., July 24, 1990) (explaining that altering the size of the common elements

requires the approval of all homeowners because property rights may not be deprived

without a property owner's consent)  The Association's claim would alter the boundaries

of an existing unit (i.e., Space One).  Such a significant change requires the unanimous

consent of the unit owners.  What is alleged in that regard?

The SAC recounts that at a December 2007 meeting of the Association, "it was

agreed among all unit owners in attendance ... that Space One would be removed."

SAC, ¶ 13.  Next, it is alleged that the Debtor notified all unit owners that Space One

was no longer available as a parking space.  *Id.* ¶ 14.  That spot would be painted over

and a subsequent condo buyer would be given a garage plan that did not designate it

for parking.  *Id.* ¶¶ 15-16.  For the past 3½ years, no one has parked in that spot.  *Id.*

¶ 17.  As a result, the Association concludes, what was formerly Space One has now

become a common element and is no longer property of the Debtor's estate.  *Id.* ¶18

While in practice the unit owners as well as the Debtor may have treated Space

One as Association property, the complaint does not set forth the legal elements

required to assert that right.  The Court sees two deficiencies here.  First, what needs to

be alleged is that the unit owners reached such an agreement unanimously.  The

meeting which the SAC references *does not* state that all unit owners were present.  It

alleges that *those in attendance* all agreed that Space One would be eliminated.  The

Court cannot tell from that whether a mere quorum was present or if all unit owners

were there. Second, there is likewise no allegation that the Association subsequently

amended the declaration to reflect the elimination of Space One as a unit as well the

resulting increase in the common elements in the parking garage.[7] *See America*

*Condominium Association, Inc. v. IDC, Inc.*, 844 A.2d 117, 143 (R.I.2004)

("The declaration is the fundamental legal document that establishes who owns what in

a condominium.") (Flanders, J., dissenting); *cf Riverwatch Condominium Owners*

*Association v. Restoration Dev. Corp.*, 980 A.2d 674, 684-685 (Pa.Commw. 2009)

(holding that deficiencies in declaration and site plans did not result in conveyance of

parcel to association). Accordingly, the Association has failed to allege a conveyance of

parking Space One from the Debtor to the Association.[8]

## Summary

For the reasons set forth above, the Association's Second Amended Complaint

will be dismissed without prejudice.

An appropriate Order follows.

By the Court:

Stephen Raslavich

Dated: May 26, 2010

Stephen Raslavich
Chief U.S. Bankruptcy Judge

---

[7]And, by their own admission, this is not the first time they have done so: The Association's Brief states that two residential units have been eliminated. The Court notes in passing the Association's point that it has purported to effectuate binding action via informal means in the past. *See* Association's Responsive Brief, ¶¶ 16-17. Derogation from proper procedure cannot help further its cause herein.

[8]This ruling moots the issue of whether the Debtor may utilize a trustee's powers under § 544(b) to avoid the conveyance of Space One to the Association.